**GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@go2.law
Jeannie Kim, State Bar No. 270713
jkim@go2.law
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Proposed Attorneys for Debtor and
Debtor in Possession
Aletha Inc. dba Aletha Health

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 26-40950 (HLB) |
| Aletha Inc. dba Aletha Health, | Chapter 11 |
|     Debtor and<br>    Debtor in Possession. | **STIPULATION BETWEEN DEBTOR AND SETTLE FUNDING, LLC REGARDING CONSENT TO USE OF CASH COLLATERAL** |

DATE:      May 11, 2026
TIME:      1:00 p.m.
PLACE:    United States Bankruptcy Court
Courtroom 19
450 Golden Gate Avenue, 16th Fl.
San Francisco, California 94102

Aletha Inc. dba Aletha Health, the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case"), on the one hand, and Settle Funding, LLC ("Settle," and together with the Debtor, the "Parties"), on the other hand, enter into this stipulation to govern the terms of the Debtor's use of Settle's cash collateral (the "Stipulation").

## RECITALS

A.      On May 4, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its financial affairs as a debtor in

4899-5373-3290.4

1

Case No.  26-40950 (HLB)
Cash Collateral Stipulation

possession. No party in interest has requested the appointment of a trustee or examiner in the Bankruptcy Case.

B. Before the Petition Date, the Debtor entered into certain loans and financial arrangements with Settle. The Debtor is a borrower under that certain Business Loan and Security Agreement with Settle dated September 22, 2025 (together with all related documents, the "Loan Agreement (Meta)"), pursuant to which the Debtor borrowed, and Settle funded directly to Meta Platforms, Inc. ("Meta"), $407,126.72 (the "Meta Loan"), on account of amounts the Debtor owed to Meta. The annual percentage rate of interest for the Meta Loan is 17.277%.

C. The Debtor also is a borrower under that certain Business Loan and Security Agreement with Settle dated January 16, 2026 (together with all related documents, the Loan Agreement (Meta), and this Stipulation, the "Settle Loan Agreement"), pursuant to which the Debtor borrowed, and Settle funded directly to All Rite Plastics ("All Rite"), $99,742.40 (the "All Rite Loan"), on account of amounts the Debtor owed to All Rite. The annual percentage rate of interest for the All Rite Loan is 24.09%.

D. In connection with the Meta and All Rite Loans (collectively, the "Settle Loans"), the Debtor granted to Settle a security interest in all of its assets. To perfect its interest in all of the Debtor's assets and personal property, Settle filed with the California Secretary of State on July 11, 2025, a UCC Financing Statement (UCC 1) against the Debtor, which financing statement has been assigned File No. U250169389945 (the "Settle Financing Statement"). As of the Petition Date, the total outstanding amount of the Meta and All Rite Loans, in the aggregate, is $100,840 (the "Settle Obligations").

E. Settle holds a perfected first-priority security interest in, among other things, all of the Debtor's accounts receivable, general intangibles, and the proceeds thereof. The cash proceeds of the Debtor's customer sales — which the Account Debtors (as defined herein) collect, hold for three or 15 days and then remit to the Debtor— constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code, as such proceeds are cash in which Settle holds a security interest (the "Cash Collateral").

4899-5373-3290.4

2

Case No. 26-40950 (HLB)
Cash Collateral Stipulation

Case: 26-40950   Doc# 31   Filed: 05/12/26   Entered: 05/12/26 13:58:30   Page 2 of 13

4899-5373-3290, v. 4

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

F.     Before the Petition Date, on or about October 21, 2025, the Debtor entered into that certain Agreement for the Purchase and Sale of Future Receipts with Parkside Funding Group LLC ("Parkside") (the "Parkside Agreement"), under which the Debtor sold to Parkside $1,950,000 in "future Receipts" in exchange for cash in the amount of $1,500,000, less fees, or $1,455,000 (the "Parkside Advance"). The Parkside Agreement required weekly payments in the amount of $40,625.

G.     Prepetition, the Debtor also entered into that certain Future Receipts Sale Agreement with Vox Funding LLC (the "Vox Agreement") on or about February 19, 2026, under which the Debtor sold to Vox $690,000 in "Future Receipts" in exchange for cash in the amount of $500,000, less fees, or $484,950.  On February 19, 2026, Vox filed with the California Secretary of State that certain UCC Financing Statement (UCC 1) bearing File No. U260012580720 (the "Vox Financing Statement") pursuant to which Vox asserts a lien against all of the Debtor's present and future accounts, chattel paper, deposit accounts, documents, personal property, assets and fixtures, general intangibles, instruments and inventory whenever located, equipment, and proceeds now or hereafter owned or acquired by Debtor.

H.     On February 22, 2026, Parkside filed with the California Secretary of State that certain UCC Financing Statement (UCC 1) bearing File No. U260012938528 (the "Parkside Financing Statement") pursuant to which Parkside asserts a lien against all of the Debtor's "Receivables" as described in detail on the Parkside Financing Statement.

I.     The Debtor disputes the amount, validity, and priority of liens asserted by Parkside and Vox Funding LLC.

J.     The Debtor commenced the Bankruptcy Case, in part, because the Debtor's account debtors — Amazon and Stripe (together with any other entity holding property of the estate that is payable to or for the account of the Debtor, the "Account Debtors") — are currently withholding all customer-sale proceeds that constitute Settle's Cash Collateral, pursuant to that certain UCC Lien Notice (as defined in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral of Settle Funding,*

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

Case: 26-40950    Doc# 31    Filed: 05/12/26    Entered: 05/12/26 13:58:30    Page 3 of 13

4899-5373-3290, v. 4

*LLC Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code; (B) Granting Adequate Protection; and (C) Directing Third-Party Account Debtors to Release Cash and Cash Collateral of Settle Funding, LLC to Debtor Under Bankruptcy Code Section 542(b)* (as filed at ECF No. 4, the "Cash Collateral Motion") issued by Parkside Funding Group LLC ("Parkside") directing the Account Debtors to redirect the Debtor's funds to Parkside).

K.      On May 5, 2026, the Debtor filed the Cash Collateral Motion seeking, among other things, authority to use the Cash Collateral of Settle.

L.      The Parties have met and conferred regarding the Debtor's request to use the collateral and Cash Collateral of Settle to avoid immediate cessation of operations and irreparable harm to the estate.  Settle has agreed to consent to the Debtor's use of Cash Collateral, subject, however, to Court approval of this Stipulation and the Debtor's payment of monthly adequate protection payments to Settle, as set forth in greater detail below.

NOW, THEREFORE, the Parties hereby agree and stipulate as follows:

## AGREEMENT

1.      Recitals.  The Parties agree that the matters set forth in the Recitals stated above are true and correct to the best of their knowledge and incorporated herein by this reference.  Notwithstanding the foregoing, the Parties acknowledge that the Recitals do not constitute evidentiary admissions or findings of fact.

2.      Cash Collateral Defined.  The term "Cash Collateral" as used in this Stipulation shall include the definition of that term as set forth in section 363(a) of the Bankruptcy Code.

3.      Joinder to Debtor's Request for Turnover.  To the extent the Court has not ruled on the Debtor's request for turnover as set forth in the Cash Collateral Motion, Settle joins the Debtor's request for an order directing Account Debtors Amazon, Stripe, Inc., and any other entity holding property of the estate that is payable to or for the account of the Debtor, to immediately release, turn over, and remit to the Debtor all funds currently held and to continue to remit such funds in the ordinary course.

4.      Payment of Operating Expenses and Lender Loan Payments.

4899-5373-3290.4

Case: 26-40950    Doc# 31    Filed: 05/12/26    Entered: 05/12/26 13:58:30    Page 4 of 13

4899-5373-3290, v. 4

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

a. From the Petition Date through and including the occurrence of a Termination Event (as defined herein), the Debtor shall be entitled to use the collateral and Cash Collateral of Settle, without further Court order or written permission of Settle, to pay (i) adequate protection payments to Settle in the amount of $12,500 per month, for each of May, June, and July 2026; (ii) adequate protection payments to Settle in monthly amounts to be determined by the Parties, as described in Section 4(b) below, for August 2026 and each month thereafter; and (iii) expenses in accordance with the budget attached hereto as Exhibit A and incorporated herein by this reference (the "Budget"). The Debtor is authorized to deviate from the categories contained in the Budget approved under this Stipulation, but not by more than 10% from the total amount budgeted in the monthly period set forth in the Budget, provided, however, that any unused portion from one month may be carried over into the following month. All payments of Cash Collateral authorized to be paid by the Debtor pursuant to the terms of this Stipulation shall be paid by the Debtor.

b. No later than July 15, 2026, the Debtor and Settle shall meet and confer regarding the amount of adequate protection payments to be paid beginning August 2026 and for each month thereafter, provided, however, that adequate protection payments to be paid beginning August 2026, shall not be less than $12,500 per month.

c. Each monthly payment of adequate protection payments shall be applied to the outstanding principal balance due from the Debtor to Settle under the Settle Loan Agreement.

5. Grant of Replacement Liens. As and for adequate protection for the use of Settle's collateral and Cash Collateral, the Debtor agrees to grant to Settle a perfected replacement lien(s) against the Debtor's assets and the proceeds thereof, to the same extent, validity, and priority as the liens held by Settle as of the Petition Date (but not including proceeds of actions commenced and/or claims prosecuted by the Debtor's estate under Bankruptcy Code sections 547, 548 and 549, which are preserved under Bankruptcy

Code section 551), limited to the amount of any diminution of its collateral including Cash Collateral expended as of the Petition Date. The replacement lien and security interest granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest. Settle may, in its sole discretion and option, file financing statements, notices of liens or similar instruments. If Settle chooses, in its sole discretion, to file such financing statements, notices of liens or similar instruments, all such documents shall be deemed to have been filed or recorded on the Petition Date whether or not so filed or recorded on such date, and the automatic stay of Bankruptcy Code section 362 shall be deemed vacated and modified to permit the filing of any of the foregoing.

6. <u>Superpriority Administrative Expense Claim</u>. To the extent the Adequate Protection Replacement Liens are insufficient to protect against any diminution in value of Settle's interest in its prepetition collateral, the Debtor shall grant to Settle a superpriority administrative expense claim, pursuant to section 507(b), with priority over all administrative expense claims and unsecured claims against the Debtor or the estate, now existing or hereafter arising.

7. <u>Reporting</u>. The Debtor will file timely each month its monthly operating report ("<u>MOR</u>"), which MOR shall reflect collections and disbursements and the Debtor's use of Cash Collateral.

8. <u>Termination of Use of Cash Collateral ("Termination Event")</u>.

a. If a Stipulation Event of Default (as hereinafter defined) occurs under this Stipulation, Settle shall give written notice of any such default to the Debtor, the Debtor's counsel via electronic mail at the addresses set forth in Section 8(c) below (the "<u>Default Notice</u>"). The Debtor's rights to use Cash Collateral shall cease after five (5) business days have elapsed from the date of said Default Notice, if such alleged Stipulation Event of Default (if capable of cure) has not otherwise been cured by the Debtor, and Settle shall thereafter have the right to seek relief from stay to take any action or exercise any right or remedy that Settle possesses under the Settle

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

4899-5373-3290.4

6

Case No.  26-40950 (HLB)
Cash Collateral Stipulation

4899-5373-3290, v. 4

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

Loan Agreement, this Stipulation, or by applicable law all which rights are expressly preserved and retained, as are any rights, remedies and defenses of the Debtor.

b. Notwithstanding any other provision contained herein, the Debtor's authorization to use Cash Collateral pursuant to this Stipulation shall terminate immediately and automatically, without any obligation of Settle to provide notice to the Debtor, upon the occurrence of any of the following: (i) entry of an Order by the Bankruptcy Court converting or dismissing the Debtor's Case; (ii) entry of an Order by the Bankruptcy Court appointing a Chapter 11 trustee or Chapter 7 trustee in the Bankruptcy Case; (iii) the reversal, vacatur, stay, amendment, supplementation or other modification of this Stipulation, without Settle's written consent in its sole discretion; or (iv) entry of an Order granting Settle relief from the automatic stay effect in the Case (any of the foregoing, a "Termination Event").  Upon the occurrence of a Termination Event, Settle shall have the right to seek relief from stay, if necessary, to take any action or exercise any right or remedy that Settle possess under the Loan Agreement, this Stipulation, or by applicable law all which rights are expressly preserved and retained, as are any rights, remedies and defenses of the Debtor.

c. The notice required to be delivered to Settle pursuant to section 6(a) of this Stipulation shall be sent by electronic mail to Settle c/o Scott Olson, Esq. and Nicholas Marcus, Esq. at solson@seyfarth.com and nmarcus@seyfarth.com, respectively.  Any notice by Settle to the Debtor shall be sent by electronic mail to the Debtor c/o Golden Goodrich LLP, attention Jeannie Kim, Esq. at jkim@go2.law.

9. Events of Default by the Debtor.  The occurrence of any one or more of the following events shall constitute a "Stipulation Event of Default" under this Stipulation:

a. If the Debtor fails to perform or cure, as the case may be, any of its obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including (i) the use and expense of disbursement of Cash Collateral except as expressly permitted hereunder; (ii) the failure to provide any report, document, or information to Settle as required hereby; (iii) the failure to

Case: 26-40950   Doc# 31   Filed: 05/12/26   Entered: 05/12/26 13:58:30   Page 7 of 13

4899-5373-3290, v. 4

make any payment to Settle as required hereby; and the failure to maintain insurance as required under the Settle Loan Agreement.

b. Any representation or warranty made by the Debtor after the Petition Date in any certificate, report, expense statement, other financial statement, or other document delivered to Settle proves to have been false or misleading in any material respect as of the time when made or given.

c. Notwithstanding any provision contained herein, Settle shall continue to reserve all of its rights and remedies as provided for under its loan documents, including the Settle Loan Agreement, and applicable law.

10. <u>Assignability</u>. This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

11. <u>Binding on Trustee</u>. The terms and conditions of this Stipulation shall be binding upon any trustee appointed herein or in any case to which this Bankruptcy Case may be converted.

12. <u>Additional Expenditures of Cash Collateral</u>.

a. If the Debtor desires to make an expenditure of Cash Collateral not expressly provided for in the Budget, the Debtor shall notify Settle via Settle's counsel at the electronic mail addresses set forth in Section 8(c) above and provide to Settle such supporting documentation as may be reasonably necessary for Settle to evaluate the necessity and propriety of the proposed expense (the "<u>Additional Authorization Notice</u>"). Settle shall have three (3) business days from its receipt of the Additional Authorization Notice to approve or object to the proposed expenditure, in its sole discretion, and shall advise the Debtor in writing at the electronic mail addresses set forth in Section 8(c) above of its decision on or before the three (3) business days have elapsed from the date of Settle's receipt of the Additional Authorization Notice. In the event Settle fails to deliver to the Debtor, within such three (3) business day period, a written objection to the Additional Authorization Notice, the proposed expenditure(s) identified in the Additional Authorization Notice

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

Case: 26-40950   Doc# 31   Filed: 05/12/26   Entered: 05/12/26 13:58:30   Page 8 of 13

4899-5373-3290, v. 4

shall be deemed to have been approved by Settle, and the Debtor shall be permitted to expend Cash Collateral subject to the terms of this Stipulation as authorized by Settle in writing. Alternatively, if Settle timely delivers a written objection to the Additional Authorization Notice, Settle shall specifically identify all reasons for which the objection is being made and, to the extent Settle is able to do so, in its sole discretion, propose such other amounts or conditions which would render the proposed expenditure acceptable to Settle. The Debtor shall not use Cash Collateral to pay for any proposed expenditures to which Settle has objected, but the Debtor shall be permitted to use Cash Collateral to pay that portion of any proposed expenditures to which Settle has not objected. Nothing contained in this Section 12(a) shall be construed to limit the Debtor's ability to file a motion with the Bankruptcy Court on notice and hearing (on a regular or expedited basis) to request that the Bankruptcy Court permit the Debtor to make an additional expenditure of Cash Collateral. Settle reserves all rights it has under applicable law to oppose any such motion made by the Debtor.

b.  If the Debtor requires emergency approval of expenditures of Cash Collateral for critical operating expenses and repairs which are not expressly provided for in the Budget, the Debtor shall notify Settle, Settle's counsel, and the Committee's counsel immediately in writing, at the electronic mail addresses set forth in Section 8(c) above, regarding the amount and nature of such emergency expenditures, providing any supporting documentation that can reasonably be provided under the circumstances, and clearly identifying that the approval of such expenditures is being sought on an emergency basis (the "Emergency Authorization Notice"). Settle shall have one (1) business day following its receipt of the Emergency Authorization Notice to approve or object to the proposed expenditure, in its sole discretion, and shall advise the Debtor in writing at the electronic mail addresses set forth in Section 8(c) above of its decision on or before the one (1) business day period has elapsed from the time of Settle's receipt of the Emergency

Case: 26-40950   Doc# 31   Filed: 05/12/26   Entered: 05/12/26 13:58:30   Page 9 of 13

4899-5373-3290, v. 4

Additional Authorization Notice. In the event Settle fails to deliver to the Debtor, within such one (1) business day period, written objections to the proposed emergency expenditures, such emergency expenditures shall be deemed to have been approved by Settle. Alternatively, if Settle timely delivers a written objection to the proposed emergency expenditure, Settle shall specifically identify all reasons for which the objection is being made and, to the extent Settle is able to do so, in its sole discretion, propose such other amounts and/or conditions which would render the proposed emergency expenditure acceptable to Settle. Nothing contained in this Section 12(b) shall be construed to limit the Debtor's ability to file a motion with the Bankruptcy Court on an expedited basis to request that the Bankruptcy Court permit the Debtor to use Cash Collateral for any emergency expenditure. Settle reserves all rights it has under applicable law to oppose any such motion made by the Debtor.

13. Execution. The parties executing this Stipulation do so in a representative capacity are duly authorized and empowered to do so. This Stipulation may be executed in original or facsimile signatures and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

14. Entire Agreement. This Stipulation constitutes the entire agreement between the Parties on the matters raised herein. No other statement, promise or agreement, either written or oral, made by either of the Parties, or their agents, shall be enforceable.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

15. <u>Court Approval</u>. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval, and, in that regard, the Debtor may give such notice and opportunity to be heard as may be required under the Federal Rules of Bankruptcy Procedure and other applicable law.

Dated:  May 12, 2026                                    GOLDEN GOODRICH LLP


                                                                 By:   */s/ Jeannie Kim*
                                                                         JEFFREY I. GOLDEN
                                                                         JEANNIE KIM
                                                                         Proposed Attorneys for Debtor and
                                                                         Debtor in Possession Aletha Inc.
                                                                         dba Aletha Health


Dated:  May 12, 2026                                    SEYFARTH SHAW LLP


                                                                 By:   */s/ Nicholas R. Marcus*
                                                                         SCOTT OLSON
                                                                         NICHOLAS R. MARCUS
                                                                         Attorneys for Settle Funding, LLC

**Golden Goodrich LLP**
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000    Fax 714-966-1002

## Exhibit A

[Amended Budget]

Golden Goodrich LLP
3070 Bristol St., Suite 640
Costa Mesa, CA 92626
Tel 714-966-1000 Fax 714-966-1002

**ALETHA HEALTH**
**CASH COLLATERAL BUDGET**
*In Thousands*

| | Wk # | 1 [N1] | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 WK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Week Ending Sunday* | 5/10 | 5/17 | 5/24 | 5/31 | 6/7 | 6/14 | 6/21 | 6/28 | 7/5 | 7/12 | 7/19 | 7/26 | 8/2 | TOTAL |
| **CASH FLOW** | | | | | | | | | | | | | | | |
| **Operating Receipts** | | | | | | | | | | | | | | | |
| Shopify | | 6.3 | 209.5 | 34.4 | 34.4 | 34.4 | 69.0 | 69.0 | 69.0 | 69.0 | 101.0 | 101.0 | 101.0 | 101.0 | **998.8** |
| Amazon | | | 46.9 | 16.2 | - | 16.2 | - | 17.8 | - | 17.8 | - | 19.6 | - | 19.6 | **153.9** |
| Wholesale | | | 12.9 | 5.3 | 37.9 | 36.0 | - | - | - | - | - | - | - | - | **92.0** |
| Returns | | | (2.6) | (2.6) | (2.6) | (2.6) | (3.2) | (3.2) | (3.2) | (3.2) | (4.7) | (4.7) | (4.7) | (4.7) | **(42.0)** |
| Sales & Use Tax | | | (2.3) | (2.3) | (2.3) | (2.3) | (3.6) | (3.6) | (3.6) | (3.6) | (5.7) | (5.7) | (5.7) | (5.7) | **(46.6)** |
| **Total Ops Rec** | | **6.3** | **264.3** | **51.0** | **67.4** | **81.7** | **62.2** | **80.0** | **62.2** | **80.0** | **90.6** | **110.1** | **90.6** | **110.1** | **1,156.2** |
| | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Advertising Spend | | (3.7) | (16.5) | (16.5) | (16.5) | (18.0) | (30.3) | (32.3) | (32.3) | (33.8) | (44.4) | (46.4) | (46.4) | (47.9) | **(384.9)** |
| Marketing Expenses | | - | (15.1) | (2.7) | - | (33.6) | (2.0) | (2.1) | - | (25.1) | (2.0) | (2.2) | - | (7.4) | **(92.0)** |
| COGS - Freight / Logistics | | - | (8.2) | (0.1) | (8.2) | (0.1) | (10.2) | (0.1) | (10.2) | (0.1) | (16.2) | (0.1) | (16.2) | (0.1) | **(69.8)** |
| COGS - Supplier | | (1.8) | (1.7) | (1.7) | (1.7) | (1.7) | (1.8) | (1.8) | (1.8) | (1.8) | (8.0) | (8.0) | (8.0) | (8.0) | **(47.6)** |
| Personnel | | (0.2) | (29.0) | (1.0) | (29.0) | (1.0) | (27.2) | (1.0) | (27.2) | (1.0) | - | (28.2) | - | (28.2) | **(173.0)** |
| Credit Card | | - | (27.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | **(77.0)** |
| Other OpEx | | (0.1) | (0.4) | (0.4) | (9.1) | (3.4) | (1.0) | (0.4) | (1.1) | (0.4) | (8.2) | (0.4) | (4.1) | (2.4) | **(31.4)** |
| Rent | | - | - | (24.5) | - | - | - | - | - | - | - | - | - | (5.0) | **(29.5)** |
| Insurance Financing | | - | (2.5) | - | (2.0) | - | (2.5) | - | (2.0) | - | (2.5) | - | (2.0) | - | **(13.7)** |
| India Subsidiary - Paid Services [N2] | | - | (7.1) | - | - | (7.0) | - | - | - | (7.0) | - | - | - | (6.8) | **(27.9)** |
| **Total Ops Disb** | | **(5.8)** | **(108.0)** | **(51.4)** | **(71.0)** | **(69.3)** | **(79.5)** | **(42.1)** | **(79.1)** | **(73.7)** | **(85.8)** | **(89.7)** | **(81.2)** | **(110.2)** | **(946.8)** |
| | | | | | | | | | | | | | | | |
| **Ops CF** | | **0.5** | **156.3** | **(0.4)** | **(3.6)** | **12.3** | **(17.3)** | **37.8** | **(16.9)** | **6.3** | **4.7** | **20.4** | **9.3** | **(0.1)** | **209.4** |
| *Cumulative Ops CF* | | *0.5* | *156.8* | *156.4* | *152.7* | *165.1* | *147.8* | *185.6* | *168.7* | *175.0* | *179.8* | *200.1* | *209.5* | *209.4* | |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | |
| Restructuring Professionals | | - | - | - | - | (60.0) | - | - | - | (75.0) | - | - | - | (75.0) | **(210.0)** |
| UST Qtrly | | - | - | - | - | - | - | - | - | - | - | - | - | (5.2) | **(5.2)** |
| Adequate Protection - Settle | | - | - | - | - | (12.5) | - | - | - | (12.5) | - | - | - | (12.5) | **(37.5)** |
| Adequate Protection - Ascentium | | - | - | - | - | (0.6) | - | - | - | (0.6) | - | - | - | (0.6) | **(1.9)** |
| Taxes | | - | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| **Total Non-Ops Disb** | | **-** | **-** | **-** | **-** | **(73.1)** | **-** | **-** | **-** | **(88.1)** | **-** | **-** | **-** | **(93.3)** | **(254.6)** |
| | | | | | | | | | | | | | | | |
| **Net CF** | | **0.5** | **156.3** | **(0.4)** | **(3.6)** | **(60.8)** | **(17.3)** | **37.8** | **(16.9)** | **(81.8)** | **4.7** | **20.4** | **9.3** | **(93.4)** | **(45.2)** |
| *Cumulative Net CF* | | *0.5* | *156.8* | *156.4* | *152.7* | *91.9* | *74.7* | *112.5* | *95.6* | *13.7* | *18.5* | *38.9* | *48.2* | *(45.2)* | |
| **LIQUIDITY** | | | | | | | | | | | | | | | |
| **Cash** | | | | | | | | | | | | | | | |
| Beginning Cash | | 130.9 | 131.4 | 287.7 | 287.3 | 283.7 | 222.9 | 205.6 | 243.4 | 226.5 | 144.7 | 149.4 | 169.8 | 179.1 | **130.9** |
| Net CF | | 0.5 | 156.3 | (0.4) | (3.6) | (60.8) | (17.3) | 37.8 | (16.9) | (81.8) | 4.7 | 20.4 | 9.3 | (93.4) | **(45.2)** |
| **Ending Cash** | | **131.4** | **287.7** | **287.3** | **283.7** | **222.9** | **205.6** | **243.4** | **226.5** | **144.7** | **149.4** | **169.8** | **179.1** | **85.7** | **85.7** |
| Payments In Transit | | | | | | | | | | | | | | | |
| **Ending Bank Balance** | | **131.4** | **287.7** | **287.3** | **283.7** | **222.9** | **205.6** | **243.4** | **226.5** | **144.7** | **149.4** | **169.8** | **179.1** | **85.7** | **85.7** |

**N1**: Week 1 disbursements were minimal and are comprised of payments initiated prepetition that did not clear until the post petition period.

**N2**: Payments to Indian Subsidiary are for services provided by the subsidiary to Aletha; includes customer service, supply chain, and quality engineering

Case: 26-40950    Doc# 31    Filed: 05/12/26    Entered: 05/12/26 13:58:30    Page 13 of 13